UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WEBER,<br><br>    Plaintiff,<br><br>v.<br><br>THE RITZ-CARLTON HOTEL COMPANY, L.L.C., et al.,<br><br>    Defendants. | Case No. 4:18-cv-03351-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 12 |

On April 27, 2017, Plaintiff Michael P. Weber ("Plaintiff") filed a complaint against Defendants The Ritz-Carlton Hotel Company, L.L.C. ("Ritz"), Marriott International, Inc. ("Marriott"), Empire Unistar Management, Inc. ("Empire"), and BraytonHughes Design Studios ("BraytonHughes") in the Superior Court of the State of California for the County of San Francisco ("San Francisco Superior Court"), alleging general negligence and premises liability for an injury he suffered from a slip and fall at the spa at the Ritz Carlton Hotel in Half Moon Bay. (San Francisco Compl., Dkt. No. 1-5.)

On June 6, 2018, Defendants removed the case from state court. (Not. of Removal from San Francisco, Dkt. No. 1-16.) On July 6, 2018, Plaintiff filed a motion to remand the case back to state court ("Motion to Remand"). (Plf.'s Mot., Dkt. No. 12.) Defendants opposed. (Defs' Opp'n, Dkt. No. 22.) Plaintiff replied. (Plf.'s Reply, Dkt. No. 27.)

The Court finds this matter suitable for resolution without hearing pursuant to Civil Local Rule 7-1 (b), and hereby vacates the hearing initially set for September 20, 2018. (Dkt. No. 26.) Upon consideration of the parties' filings, and for the reasons stated below, Plaintiff's Motion to Remand is GRANTED, and the case is therefore remanded to San Francisco Superior Court.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On July 13, 2016, Plaintiff filed a complaint against Defendants Ritz and Marriott (collectively referred to as "the Hotel Defendants") in the Superior Court of the State of California for the County of San Mateo ("San Mateo Superior Court"). (San Mateo Compl., Dkt. No. 1-1.) Plaintiff alleges that he was injured when he fell in the spa facilities at the Ritz Carlton Hotel in Half Moon Bay, which was owned and operated by the Hotel Defendants. (*Id*. at 4.) On August 15, 2016, Defendant Ritz filed an Answer to Plaintiff's Complaint in San Mateo Superior Court. (Answer, Dkt. No. 1-2.) On that same day, Defendant Ritz also filed its Notice of Removal of Case to Federal Court. (Not. of Removal from San Mateo, Dkt. No. 1-3.) The matter was removed to the U.S. District Court for the Northern District of California. (*Id*.) On or around January 27, 2017, the parties stipulated to dismissal without prejudice of the federal matter. (Stip. of Dismissal without Prejudice, Dkt. No. 1-4.)

In addition to the Hotel Defendants, Plaintiff wanted to join all other potentially responsible parties in his lawsuit, including those who designed and maintained the floor. (Plf.'s Mot. 2.) After removal, Plaintiff was able to obtain information from the Hotel Defendants that enabled them to join the maintenance company, Empire, and the company that designed the spa and its floor, BraytonHughes. (*Id*. at 3.) Empire is a Georgia based company and BraytonHughes is a California company headquartered in San Francisco. (Def.'s Opp'n 2.) On April, 27, 2017, Plaintiff filed a complaint against Defendants Ritz, Marriott, BraytonHughes and Empire in San Francisco Superior Court.[1] (San Francisco Compl.) The depositions of the witnesses employed by Ritz, Empire, and BraytonHughes were not completed until November 9, 2017. (Plf.'s Mot. 8.) All parties also participated in a mediation on December 5, 2017 that did not result in any resolution. (*Id*.) In December 2017 and January 2018, both of Plaintiff's attorneys at the time (who were from The Hassel Law Group) had critically ill parents in Southern California that required a substantial amount of out-of-the-office time for care. (*Id*.) The availability of Plaintiff's attorneys, who had larger than normal caseloads, was further limited by the unexpected departure of one of their attorneys from their small firm. (*Id*.) Plaintiff's attorneys were concerned that they would not be

---

[1] The case was filed in San Francisco Superior Court with a case number of CGC-17-558434.

able to give their case the level of attention it needed, including preparation for the June 2018 trial. (*Id.*) On February 28, 2018, The Veen Firm, P.C. took over representation of Plaintiff. (*Id.*) Plaintiff's new attorneys required about one month to get up to speed on the case. (*Id.*) On March 7, 2018, Defendant Empire filed a Motion for Summary Judgment ("MSJ"). (Dkt. No. 1-13.) Empire's proposed order for that MSJ indicated that no parties called for a hearing after the tentative ruling issued on May 24, 2018. (Dkt. No. 23-4.) On June 12, 2018, the proposed order granting the MSJ was signed by Judge Richard Ulmer of the Superior Court. (*Id.*) In mid-March 2018, the deposition of Plaintiff's sole treating doctor was completed. (Plf.'s Mot. 8.)

In early April 2018, Plaintiff and BraytonHughes engaged in settlement discussions. (*Id.*) A mediator facilitated these discussions remotely through phone over the course of a couple of weeks until the parties agreed to a settlement of $5,000. (*Id.*) On April 30, 2018, Defendant BraytonHughes filed a Motion for Determination of Good Faith Settlement Pursuant to Code of Civil Procedure Section 877.6 ("Motion for Determination"). (Dkt. No. 1-14.) On May 3, 2018, the San Francisco Superior Court granted BraytonHughes' Motion for Determination. (*Id.*) On May 16, 2018, Plaintiff dismissed Defendant BraytonHughes. (Dkt. No. 1-15.) Thus, the parties remaining in this matter now are Plaintiff and Defendants Ritz and Marriott (collectively, "Defendants"). Plaintiff is a resident and citizen of the State of California and Defendants are corporations organized under the laws of the State of Delaware, with their principal places of business in Maryland. On June 6, 2018, Defendants removed the case from San Francisco Superior Court to this Court. (Not. of Removal from San Francisco, Dkt. No. 1-16.) On July 6, 2018, Plaintiff then filed a motion to remand the case back to state court. (Plf.'s Mot.) Defendants opposed. (Defs' Opp'n.) Plaintiff replied. (Plf.'s Reply.)

## II. LEGAL STANDARD

"Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1224 (9th Cir. 2008). "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). Under 28 U.S.C. section 1446(b), a

1  defendant may remove a case within thirty days of receiving a copy of the initial pleading setting
2  forth the claim for relief upon which such action or proceeding is based. When removal is based
3  on diversity jurisdiction under 28 U.S.C. section 1332, and where the initial pleading is not
4  removable, the case may not be removed more than one year after the commencement of the
5  action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a
6  defendant from removing the action. 28 U.S.C. § 1446(c)(1).

## III. DISCUSSION

Plaintiff maintains that this case should be remanded to state court on the grounds that Defendants' removal based on diversity was untimely due to the removal occurring more than one year after commencement of the action. (Plf.'s Mot. 3.) In their opposition, Defendants respond that the removal was not untimely because they established an exception to the one-year deadline for removal. (Defs' Opp'n 4.) Plaintiff replies that he has satisfied the presumption of good faith by actively litigating against former Defendant BraytonHughes and that Defendants have not met their high burden to show bad faith. (Plf.'s Reply 2-3.)

### A. Fraudulent Joinder

Defendants argue that Plaintiff fraudulently joined BraytonHughes in bad faith because Plaintiff did not have a valid claim against BraytonHughes even though Plaintiff settled the case against BraytonHughes for $5,000. (Defs' Opp'n 6.)

Although the doctrine of fraudulent joinder and the bad faith exception both thwart gamesmanship by plaintiffs in diversity cases, their standards are not the same. *NKD Diversified Enters. v. First Mercury Ins. Co.*, No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *2 (E.D. Cal. Apr. 28, 2014). The bad faith exception of 28 U.S.C. section 1446 ("Section 1446") governs the timing of removal. *Id*. Fraudulent joinder is a court created doctrine that pertains to the court's jurisdiction over the action. *Id*. In addressing the issue of fraudulent joinder, the Ninth Circuit looks to whether the facts in the complaint would preclude the plaintiff from recovering against the non-diverse defendant. *Id*. Moreover, district courts in the Ninth Circuit only apply the fraudulent-joinder rule in cases where it is "indisputably clear" that the plaintiff will be unable to state a cause of action against the non-diverse defendant in state court. *Id*.

In the instant case, Defendants argue that Plaintiff did not have a valid claim against Defendant BraytonHughes, thus, the joinder of BraytonHughes is fraudulent. (Defs' Opp'n 4-6.) Defendants also argue that the discussions between Defense Counsel and Plaintiff's Counsel regarding whether a potential local defendant exists for the case proceeding in San Francisco Superior Court indicate an effort to find a California defendant to destroy diversity. (Defs' Opp'n 8.) "There is nothing 'inherently invidious or bad faith about using deliberate tactics to defeat federal jurisdiction,' nor is there anything wrong with plaintiffs having a preference for state court." *Heacock v. Rolling Frito-Lay Sales, LP*, No. C16-0829-JCC, 2016 WL 4009849, at \*4 (W.D. Wash. July 27, 2016). As master of his complaint, plaintiff is entitled to use deliberate tactics to defeat federal jurisdiction. *Id*. at \*5. Here, Plaintiff brought claims of negligence and premises liability against BraytonHughes. (San Francisco Compl. 13.) Plaintiff also alleges that BraytonHughes breached its duties owed to Plaintiff in that it failed to recommend or require the use of slip-resistant flooring and installation of handrails to prevent foreseeable injury while providing professional design, decoration and consulting services to Defendants. (*Id*.)

The elements of a negligence and a premises liability claim are the same: "a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1158 (2016). Plaintiff claims that it was foreseeable that there would be water on the tile floor of the spa facility and that the presence of water could cause a guest to slip, fall and suffer injury. (San Francisco Compl. 13.) On the date of the incident, there were no signs, mats or other surface materials to help prevent a slip due to water, nor were there handrails or other structures which a guest could grab onto after stepping onto a wet floor to prevent a fall. (*Id*.) Plaintiff alleges that because BraytonHughes was responsible for configuring the layout of the spa, recommending the specific type and placement of flooring used, and determining whether handrails or other structures that would help prevent a fall should be installed, BraytonHughes also owed a duty to adhere to industry safety standards and good design practice in its design work. (*Id*.) Plaintiff further alleges that by failing to comply with industry standards and recommendations regarding the safe design of spa facilities, BraytonHughes breached its duty of care. (*Id*.) Here, Plaintiff alleges sufficient facts to support his claim against BraytonHughes. At

this point, Plaintiff need not show that he will prevail on his claim. He need only allege sufficient facts to support a claim, and he has done so here. *See Hinkson v. Bank of Am.*, No. 12CV1368 DMS (MDD), 2013 WL 12114632, at *3 (S.D. Cal. Feb. 12, 2013).

In light of the state court's finding that there was a good faith settlement between Plaintiff and BraytonHughes, the Court finds Defendants' argument that Plaintiff attempted to fraudulently join BraytonHughes unpersuasive. Therefore, the Court finds that Plaintiff has articulated a valid theory of liability, and the joinder of Defendant BraytonHughes was not fraudulent.

**B. Bad Faith**

There is no dispute that Defendants' removal of this action was facially untimely. The issue, however, is whether Plaintiff acted in bad faith to prevent removal of this action within the one-year time frame allowed by statute.

The bad faith exception to the one-year limitation on removal of diversity cases is a fairly recent amendment to Section 1446. *NKD Diversified Enters.*, Inc., 2014 WL 1671659, at *3. The intent of the amendment was to clarify that the one year limitation was procedural and can be excused upon a showing of bad faith. *Id*. The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to 28 U.S.C. section 1446(c)(1). *Id*. While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold. *Id*. The removing party bears the burden of demonstrating that the plaintiff has acted in bad faith, particularly given the strong presumption against removal. *Id*. at *3-4.

Other district courts interpret the bad-faith exception as applying to plaintiffs who engage in strategic gamesmanship by keeping a removal-spoiling party in the case past the one-year mark in order to prevent a defendant's removal from state court. *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014). In *Heller v. American State Insurance Co.*, No. CV 15-9771 DMG (JPRx), 2016 WL 1170891, at *1 (C.D. Cal. Mar. 25, 2016), the plaintiff sued two corporations and one individual defendant, with one of the corporate defendants being later dismissed. The individual defendant had never been served and was eventually dismissed by the plaintiff 18 months after commencement of the action. *Id*. The *Heller* court found the plaintiff's explanation as

to why the individual defendant was not dismissed earlier in the proceedings inconsistent. *Id*. at *3. "Although there is a high bar for a finding of bad faith, the totality of the circumstances in this case weigh[s] against a finding of sufficient diligence and [is] highly indicative of 'strategic gamesmanship' intended to prevent removal." *Id*.

Similarly, in *Forth v. Diversey Corp.*, No. 13-CV-808-A, 2013 WL 6096528, at *1 (W.D.N.Y. Nov. 20, 2013), the plaintiffs sued two foreign corporations and one non-diverse corporation. The non-diverse corporate defendant notified plaintiffs that it was not a proper defendant. *Id*. Plaintiffs claimed that more discovery was required and refused to dismiss the non-diverse corporate defendant. *Id*. Plaintiff eventually dismissed the non-diverse corporate defendant 16 months after the commencement of the action without taking any discovery. *Id*. The *Forth* court found that plaintiffs' explanations for their failure to earlier dismiss the non-diverse corporate defendant from the action were inconsistent and implausible. *Id*. at *3.

In contrast, the *NKD* case held that the defendants failed to carry their burden to demonstrate bad faith conduct by the plaintiffs when the plaintiffs brought a valid claim for negligence against a non-diverse party and conducted discovery. 2014 WL 1671659, at *3, *5. Although defendants argued that plaintiffs conducted the bare minimum of discovery against the non-diverse defendant, the court found that plaintiffs did actively litigate the negligence claim against it. *Id*. at *5. The defendants in the *NKD* case also argued that the timing of the dismissal, with the lack of any attempt to pursue judgment against the non-diverse defendant, demonstrated bad faith on the part of plaintiffs. *Id*. at *4. The court concluded that while the timing of the dismissal of the non-diverse defendant may appear suspect, that in and of itself does not support the contention that such defendant was named to defeat diversity jurisdiction. *Id*. In this case, the non-diverse defendant was dismissed almost 15 months after the action was commenced; as a result, this time frame is distinguishable from the time frame that other courts have found sufficient to find bad faith. *Id*. at *5.

Here, Defendants argue that Plaintiff did not actively litigate his case against BraytonHughes because Plaintiff did not conduct significant discovery of BraytonHughes and the parties eventually settled for only $5,000, compared to the amount of $749,000 in the Offer to

7

Compromise that Plaintiff served the Hotel Defendants. (Defs' Opp'n 7.) The court in *Aguayo v. AMCO Insurance, Co.*, 59 F. Supp. 3d 1225, 1263 (D.N.M. 2014), found that active litigation can be determined by whether a plaintiff asserts valid claims, takes discovery, and negotiates settlement, among other things. If a plaintiff does not actively litigate against a non-diverse defendant, then bad faith is established. *Id*. However, if a plaintiff does actively litigate, "then good faith is rebuttably presumed." *Id*. In the present case, Plaintiff served BraytonHughes with the summons and complaint, deposed BraytonHughes' person most qualified, requested and obtained documents from BraytonHughes through the discovery process, participated in mediation with all the defendants and eventually reached a settlement with BraytonHughes. Plaintiff further explains that he saw BraytonHughes as a less responsible party than the Hotel Defendants and he did not want BraytonHughes to have to report the matter to the state licensing board, therefore, the amount of settlement with BraytonHughes was less than the settlement amount offered to the Hotel Defendants.[2] (Plf.'s Reply 3.) The fact that Plaintiff settled with BraytonHughes for a small amount of recovery as opposed to the comparatively large amount sought from the Hotel Defendants does not taint the dismissal. See *Heacock v. Rolling Frito–Lay Sales, LP*, 2016 WL 4009849, at *5 (W.D. Wash. July 27, 2016) (finding no bad faith even when the non-diverse defendant was dismissed for no material benefit to the plaintiff). Accordingly, because the Court finds that Plaintiff actively litigated against BraytonHughes, good faith is presumed.

Defendants also argue that the dismissal of BraytonHughes was delayed because Plaintiff settled with BraytonHughes five months after the deposition and filed the dismissal just after the one year statute of limitations for removal expired. (Defs' Opp'n 7.) In the timing for naming a non-diverse defendant, the timing of dismissal and the explanation given for that dismissal are both relevant to the bad faith inquiry. *Heacock*, 2016 WL 4009849, at *3. In *Heller*, the court found bad faith when the plaintiff offered inconsistent explanations as to why the defendant was not dismissed earlier in the litigation. 2016 WL 1170891, at *3. However, the court in *NKD* found

---

[2] Under California Law, architects are required to report to the California Architects Board any civil judgment or settlement that exceeds $5,000 from an action alleging negligence by the licensee in the practice of architecture. It was important for BraytonHughes to avoid this reporting requirement to the Board. (Deianni Decl. ¶10.)

8

the dismissal of a non-diverse defendant fifteen months after the commencement of the action insufficient to signify that the plaintiff acted in bad faith. 2014 WL 1671659, at *4. In the instant case, Plaintiff was initially represented by The Hassell Law Group, and The Veen Firm, P.C. later took over the representation in February, 2018, due to the Hassell Law Group's diminished availability. (Plf.'s Mot. 8.) Plaintiff and BraytonHughes began settlement discussions in early April because of the upcoming June trial in San Francisco Superior Court, and agreed to a settlement in mid-April of 2018. (*Id*.) BraytonHughes required a stipulation regarding good faith as part of the settlement, and filed a Motion for Determination, which was granted by the San Francisco Superior Court on May 3, 2018. (*Id*.) Plaintiff dismissed BraytonHughes upon receipt of the settlement check on May 16, 2018, which is thirteen days after the one-year deadline for removal. (*Id*.) While the timing of the dismissal of BraytonHughes may appear suspect, that in itself does not support the contention that BraytonHughes was named solely to defeat diversity jurisdiction. It is not uncommon for parties to start engaging in conversations of settlement until the case gets closer to the trial date. For the bad faith exception to apply, a plaintiff's desire to stay in state court must be the but-for cause of their decision to keep a non-diverse defendant in the case past the one-year deadline for removal. *Heacock*, 2016 WL 4009849, at *4. The Court, therefore, finds that Plaintiff provided a reasonable explanation for the timing of the dismissal of BraytonHughes.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand is GRANTED. This case is therefore remanded to the San Francisco County Superior Court.

IT IS SO ORDERED.

Dated: September 19, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge

9